IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DARREN DOUTHITT,     ) | |
|     Plaintiff,     ) | |
| ) | CIVIL ACTION NUMBER |
| v.     ) | |
| ) | 03-PWG-2019-S |
| ANNISTON CITY BOARD OF     ) | |
| EDUCATION,     ) | |
| ) | |
|     Defendant     ) | |

MEMORANDUM OF OPINION

Darren Douthitt, plaintiff herein, filed this action against the Anniston City Board of Education alleging violations of the Fourteenth Amendment[1] and breach of contract. The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c) and LR 73.2.

This matter is before the court on motion of defendant Anniston City Board of Education for summary judgment (doc. #13).

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish

---

[1] The complaint raised a violation § 1983 for due process. The defendant addressed this complaint in its motion for summary judgment, but the plaintiff did not address this issue in his reply brief. *McMaster v. United States*, 177 F.3d 936, 940-41 (11th 1999) (a claim may be considered abandoned when the allegation is included in the plaintiff's complaint, but he fails to present any argument concerning this complaint to the district court), *cert denied,* 528 U.S. 1118 (2000).

his prima facie entitlement to summary judgment by showing absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following pertinent facts are undisputed or, if disputed, viewed in the light most favorable to plaintiff, non-moving party. Darren Douthitt was hired in 2001 by the Anniston Board of Education to be the principal of Anniston High School. The contract provided for a term of one (1) year, and, if he was not terminated, he would be employed for an additional three (3) years. The contract provides that it shall "not be amended, modified, or waived except in writing

authorized, agreed upon, and executed by the Contract Principal and the Board, upon the written recommendation of the Superintendent." In the Spring of 2002, despite the Superintendent's recommendation that he enter into the three year contract, plaintiff requested he enter into another one year contract. Pursuant to this request, on May 14, 2002, the Superintendent recommended that the Board approve a second one year contract in 2002. On May 16, 2002, the Board approved the recommendation that Plaintiff's contract be renewed for one year. Section 17 of the second contract stated:

> Provisions of this Contract, and any changes made pursuant to Section 12, above, supercede any previous agreements or understandings between the parties- whether oral or in writing- and will control in the event of conflict with any other agreement or understanding that the parties may enter into.

The second contract plaintiff executed provided that "After completion of the probationary period, the board may terminate the Contract Principal for any reason or without a stated reason."

On August 1, 2002 the acting Superintendent was subsequently replaced by Dr. Felton. In August or September 2002, Plaintiff informed a secretary that he wanted to rescind his prior request for a one year contract. However, in January or February 2003, Plaintiff signs the second one year contract. Plaintiff did not read the contract and felt pressure from the secretary requesting his signature to be expedient. Plaintiff claims the second contract is invalid because (1) it is not supported by consideration, (2) there was a dispute as to the meeting of the minds, and (3) it was not voluntarily executed.

On May 15, 2003, the new Superintendent recommended the Board not renew plaintiff's contract, effective June 30, 2003, the end of the contract period. Plaintiff received a letter on May 16, 2003, stating his contract would not be renewed for the 2002-2003 school year. Plaintiff

continued his service until June 30, 2003. Plaintiff claims the second contract is invalid because (1) it is not supported by consideration, (2) there was a disputed as to the meeting of the minds, and (3) it was not voluntarily executed.

### I. Consideration

Plaintiff claims that the second contract was not supported by consideration. "Consideration for a promise is an act, forbearance, or the creation, modification, or destruction of a legal relation, or a return promise, bargained for and given in exchange for the promise." *Erika, Inc. v. Blue Cross Blue Shield of Alabama*, 496 F. Supp. 786, 788 (N.D. Ala. 1980).

In *National Union Life Ins. Co. v. Ingram*, 154 So. 2d 666, 671 (Ala. 1963), the court held that the Defendant's assignment of his first contract so that it could be cancelled was sufficient consideration to support the subsequent unilateral contract.

In *Advertiser Co. v. Electronic Engineers, Inc.*, 527 So. 2d 1317 (Ala. Civ. App. 1988), the Defendant entered into a five-year contract for the Plaintiff to provide it with background music for which the defendant paid a monthly fee. Ten months before the original five year contract was due to expire, the parties signed a contract adding an additional service. The new contract stated that it canceled the previous agreement and would run for five years. Three months before the expiration of the first contract, defendant notified plaintiff that it was terminating its contract. Subsequently the Plaintiff sued for breach of contract for the second contract and the defendant claimed the second contract was not supported by consideration. The court held that the consideration for the second contract could have been the mutual consent of the parties to rescind the previous contract and create the new one. *Id.* at 1319.

When the Douthitt and the Board of Education entered into the second contract, the consideration was the modification of a legal relation in return for a promise. Douthitt and the Board of Education destroyed the legal relation created by the first contract and created a new legal relation based upon the expressed wishes of Douthitt communicated to the Superintendent and further requested to the Board of Education. Like the Plaintiff and Defendant in *Advertiser* whose mutual consent provided adequate consideration, Douthitt and the Board of Education's mutual consent to the second one year contract was adequate consideration.

## II. Meeting of the Minds

Douthitt claims that there was not a meeting of the minds as to the terms of the second contract. However, Douthitt admits he told the Superintendent that he wanted to enter into a one year contract. The Superintendent demonstrated his understanding of this by requesting the Board approve a second one year contract for the Douthitt.  Douthitt did inform a secretary that he had changed his mind after requesting the contract be for one year. However, the Douthitt did not inform the Superintendent or the Board of this change. Despite the fact that Douthitt had requested one year and then informed a secretary that he changed his mind, Douthitt failed to read his employment contract before he signed it.

"Conduct of one party to a contract from which the other may reasonably draw an inference of assent to an agreement is effective acceptance." *Cook's Pest Control, Inc. v. Rebar*, 852 So. 2d 730, 738 (Ala. 2002) *quoting Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Kilgore*, 751 So. 2d 8, 11 (Ala. 1999).

Viewing the facts in the light most favorable to the Douthitt, there remained a meeting of the minds between the two parties to the contract as to the second contract term lasting one year.

Douthitt's request to the superintendent that he enter into a one year contract combined with the superintendent's subsequent proposal to the Board of Education provides sufficient evidence of a meeting of the minds as to the fact that the second contract be issued for one year.

Furthermore, both parties to the contract intended to release the other of the obligations of the first contract when the second contract was executed. "[A] mutual rescission consists of the same requisite elements as a legal contract." *Celtic Life Ins. Co. v. Lindsey*, 765 So. 2d 640, 642 (Ala. 2000) *quoting Matthews v. Martin*, 394 So. 2d 943, 944 (Ala. 1981). "It includes a meeting of the minds of the parties to mutually release each other from their obligation under the contract, fully settling all rights under the contract." *Id.* Both Douthitt expressed his desire to be released from the first contract when he requested the second contract be for a term of one year. The Board expressed their desire to be released from the first contract when they incorporated the following language into the second contract:

> Provisions of this Contract, and any changes made pursuant to Section 12, above, supercede any previous agreements or understandings between the parties- whether oral or in writing- and will control in the event of conflict with any other agreement or understanding that the parties may enter into.

Thus, the parties engaged in a meeting of the minds to mutually release each other from the obligations of the first contract.

### III. Voluntary Execution of Contract

Douthitt claims the second one year contract was not voluntarily executed. Douthitt's basis for this claim is that he did not read the contract and that he felt pressured to sign it. However, this does not mean that the contract was not voluntarily entered into.

If a person can read a contract, but does not do so before signing the contract, that person may not avoid the effect of their signature unless there is fraud, deceit or misrepresentation. *BSI Rentals, Inc. v. Wendt*, 2004 WL 817141 (Ala. Civ. App. 2004) *citing Mitchell Nissan, Inc. v. Foster*, 775 So. 2d 138, 140 (Ala. 2000). Furthermore, "It would impose a punitive result [upon the other party to the contract] . . . to determine that a party who chooses not to read a contract [he] enters into is not obligated by the contract and can ignore any provision that does not suit [him]." *Safeway Ins. Co. of Alabama v. Taylor*, 758 So. 2d 523, 525-26 (Ala. 1999) *quoting Locklear Dodge City Inc. v. Kimbrell*, 703 So. 2d 303, 306 (Ala. 1997).

To allow Douthitt to recover for a breach of contract of the first contract would "impose a punitive result" upon the Board of Education for Douthitt's failure to read his employment contract. Douthitt told the Superintendent that he wanted only a one year contract instead of a three year contract. He then told a secretary that he had changed his mind. However, Douthitt did not check the contract he signed to find out what the terms were. This does not mean that he involuntarily executed the contract.

### Conclusion

First, Douthitt and the Board of Education entered into a second contract for one year. The consideration for this second contract was the mutual agreement to terminate the legal relation created by the first contract. Second, the parties actions evidence a meeting of the minds to enter into the second contract as well as to mutually rescind from the first contract. Finally, despite the fact that Douthitt felt pressured to sign the contract quickly, he entered into the contract voluntarily. Thus, the Anniston City Board of Education did not breach the first contract.

The Anniston Board of Education motion for summary judgment (doc #13) is due to be granted. A separate Final Judgment will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the 16th day of December, 2004.

_____
PAUL W. GREENE
CHIEF MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DARREN DOUTHITT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NUMBER |
| v. ) | |
| ) | 03-PWG-2019-S |
| ANNISTON CITY BOARD OF ) | |
| EDUCATION, ) | |
| ) | |
| Defendant ) | |

## JUDGMENT

In accordance with the Memorandum of Opinion this day entered the court concludes no genuine issue of material fact remains as to plaintiff's claims. Defendant's motion for summary judgment (doc. #13) is due to be and the same is GRANTED. It is ORDERED, ADJUDGED and DECREED that judgment is ENTERED in favor of defendant Anniston City Board of Education. The clerk is DIRECTED to close this action.

As to the foregoing it is SO ORDERED this the 16th day of December, 2004.

_Paul W. Greene_
PAUL W. GREENE
CHIEF MAGISTRATE JUDGE